**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LORI O. S.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.    23-cv-3859** |
| | : | |
| **MARTIN J. O'MALLEY,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

<u>**MEMORANDUM OPINION**</u>

**LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE**                                    **July 24, 2024**

Plaintiff Lori O. S. brought this action seeking review of the Commissioner of Social Security Administration's decision denying her claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-34.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 10) is **GRANTED**.

## I.    PROCEDURAL HISTORY

On April 13, 2021, Plaintiff protectively filed for DIB, alleging disability since August 14, 2020, due to major depressive disorder, adjustment disorder with mixed anxiety and depression, and post traumatic stress disorder (PTSD).  (R. 189, 232).  Plaintiff's application was denied at the initial level and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 92-110).  Plaintiff, represented by counsel, and a vocational expert (VE) testified at the March 9, 2022 administrative hearing.  (R. 35-56).  On June 9, 2022, the ALJ issued a decision unfavorable to Plaintiff.  (R. 12-34).  Plaintiff appealed the ALJ's decision, but the Appeals Council denied her request for review on August 23, 2023,

thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  (R. 1-6).

Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania on October 4, 2023.  (Compl., ECF No. 1).  On October 12, 2023, she consented to my jurisdiction.  (Consent, ECF No. 5).  Plaintiff's Brief and Statement of Issues in Support of Request for Review was filed on March 18, 2024.  (Pl.'s Br., ECF No. 10).  On April 8, 2024, the Commissioner filed a response (Resp., ECF No. 11), and Plaintiff filed a reply on April 22, 2024 (Reply, ECF No. 12).

## II.    FACTUAL BACKGROUND

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on June 3, 1958, and she was sixty-two years old on the alleged disability onset date.  (R. 189).  She completed high school and four or more years of college. (R. 233).  Plaintiff previously worked as an attorney at a law firm.  (R. 233).

### A.    Medical Evidence

In 2019, Plaintiff tested positive for a cancer gene, and she had risk-reducing surgery. (R. 316, 335, 339).  In July 2020, Plaintiff reported to her primary care physician, Lillian Jalil, M.D., that she was anxious, not sleeping, and was having problems with her son.  (R. 419).  Dr. Jalil diagnosed anxiety and prescribed Xanax.  (R. 420).  At her next appointment in August 2020, she reported continuing problems with her son.  (R. 415).  She said she could not cope, had schizophrenia and psychosis, was anxious, depressed, and tearful, and cannot work.  (R. 415-16). She was started on Zoloft.  (R. 416).

Subsequently, Plaintiff reported to her primary care physician that she had anxiety and

PTSD, was stressed about her son, had difficulties completing tasks, coping, and sleeping, could not read for longer than ten minutes, could not work, and was seeing a therapist and a psychiatrist. (R. 495, 500, 505, 583, 599). She did report some temporary improvement in her sleep and anxiety, and she said she was not crying as much. (R. 389, 509). Diagnosed with depression and PTSD, Plaintiff's Zoloft dosage was increased, she was restarted Plaintiff on Xanax, and she was prescribed Trazadone and Ambien. (R. 500-01, 509). A mental status examination conducted in March 2022 showed that Plaintiff was under stress and anxious. (R. 625).

In 2020 and 2021, Plaintiff's therapist, Gina Kilberg, M.A., submitted several letters indicating that Plaintiff had received individual therapy weekly beginning in September 2020 for acute distress from family trauma, an adjustment disorder, PTSD, and depression. (R. 573-74, 576, 595). The therapist stated that her day-to-day functioning was impaired. (*Id*.).

Louise Merves-Okin, Ph.D., Plaintiff's treating psychologist, completed a private disability insurance form on February 10, 2021. (R. 577-79). She stated that she advised Plaintiff to stop working in August 2020 due to depression and anxiety triggered by the death of both parents in close proximity, her previous role as a caregiver for her severely ill father, her own medical conditions, and the mental health issues for her adult child. (R. 577). Dr. Merves-Okin further observed that Plaintiff was unable to perform her routine at either home or work because of her depression and anxiety, which interfered with her ability to concentrate and complete a task. (R. 578).

On July 2, 2021, Dr. Merves-Okin completed a mental medical opinion form. (R. 367-73). The treating psychologist indicated that Plaintiff had significant cognitive decline in complex attention and executive function; qualitative deficits in verbal communication, nonverbal communication, and social interaction; depressed mood; diminished interest in almost

all activities; sleep disturbance; decreased energy; feelings of guilt; difficulty concentrating or thinking; detachment from social relationships; and fatigue.  (R. 368).  She opined that Plaintiff had the limited but satisfactory ability to ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and interact appropriately with the general public.  (R. 369-70).  It was noted that Plaintiff would find working with others stressful.  (R. 371).

On July 20, 2021, Martha Diprinzo, M.A., a licensed psychologist, performed a mental status evaluation at the state agency's request.  (R. 374-77).  Plaintiff reported problems sleeping, daily depression with dysphoric mood, crying spells, irritability, social withdrawal, frequent anxiety with excessive apprehension and worry, restlessness, muscle tension, anxiousness in crowds, preference to stay at home, panic attacks once or twice a month with palpations, breathing difficulties, and choking sensation, concentration and focus difficulties, and organization and planning difficulties.  (R. 375).  On examination, she had a somewhat depressed, flat, and restricted affect, mildly impaired attention and concentration, and mildly impaired recent and remote memory skills.  (R. 376).

Diprinzo opined that Plaintiff was moderately limited in her ability to interact appropriately with the public, supervisors, and co-workers, and respond appropriately to usual work situations and to changes in a routine working setting.  (R. 378-79).  She based her assessment on Plaintiff's anxiety and depression.  (R. 379).

On July 26, 2021, state agency psychological consultant Anthony A. Galdieri, Ph.D., likewise found that Plaintiff had moderate limitations interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (R. 68).  Dr. Galdieri stated both her social and coping skills were functional.  (R. 69).

4

Upon reconsideration on October 15, 2021, a second state agency psychological consultant, Melissa Franks, Psy.D., opined that Plaintiff was moderately limited in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (R. 81).  She explained that Plaintiff was capable of asking simple questions and accepting instructions, could maintain socially appropriate behavior, and her activities of daily living (ADLs) and social skills were functional.  (*Id.*).

On October 28, 2021, Dr. Jalil completed a private disability insurance form and reported that Plaintiff could not work for the next six months to a year due to headaches, high blood pressure, and mental impairments.  (R. 581).  In letters dated December 2, 2021 and April 19, 2022, Dr. Merves-Okin indicated that Plaintiff would be unable to return to her previous position as an attorney, she could not handle returning to a full-time job, and she would need considerable time and therapy to handle any full-time position.  (R. 596-97).  Plaintiff's psychiatrist, George S. Bell, M.D., stated in a letter dated December 20, 2021 that Plaintiff's anxiety and depression prevented her from working.  (R. 598).

**B.    Non-Medical Evidence**

Plaintiff completed an adult function report on April 13, 2021.  (R. 216-23).  She stated that she lives with her family.  (R. 216).  She could not perform her job because of the caseload and hour requirements.  (*Id.*).  She has significant difficulty concentrating and thinking accurately, is anxious and tired due to a lack of sleep, and can barely handle one or two tasks a day.  (*Id.*).  She goes food shopping approximately every ten days.  (R. 219-20).  Plaintiff spends time with other people daily, but she prefers not to see others in person and does not like to go anywhere.  (R. 220).  She indicated that she does not like to see people because of embarrassment.  (R. 221).  Plaintiff checked boxes indicating difficulties with talking, memory,

completing tasks, concentration, understanding, and following instructions. (*Id.*). She stated that she can only follow easy written instructions, and she often asks for spoken instructions be repeated. (*Id.*). She further indicated that she has no problem getting along with authority figures and cannot handle stress or changes in routine. (R. 222).

Plaintiff completed two additional adult function reports, dated May 28, 2021 and October 2, 2021, which are substantially similar to her first report. (R. 243-50, 270-77).. Plaintiff's husband also completed a third party adult function report on May 30, 2021 that largely tracks the forms completed by Plaintiff. (R. 251-58).

Plaintiff testified at the March 3, 2022 administrative hearing that she left her job as a lawyer after her son had serious mental health issues. (R. 42). She also noted that her mother had passed away in 2016, at which time she became the primary caretaker for her father, who was very ill and died in 2019. (R. 45-46). Around the time of his death, she tested positive for the cancer gene and underwent surgery. (*Id.*). She could not concentrate and "couldn't get words out," and she was concerned that, although her partners were helping her, she could possibly be committing malpractice. (R. 43). Plaintiff continues to go to therapy sessions twice a week, sees a psychiatrist for medication management, and participates in a support group for parents of adult children with mental illness. (R. 43, 52). She believed the treatment has helped. (R. 44, 52). Furthermore, Plaintiff said she could not perform an unskilled job because some days she cannot get out of bed, has problems sleeping, feels anxious from unexpected changes or other stressors, has panic attacks, cries frequently, has difficulties expressing herself, cannot concentrate, and sometimes has problems leaving the house and reading. (R. 44-48, 51-52). It is difficult for her to spend time with her friends because they talk about their adult children, she does not like to talk about her son, and she generally does not want to be with other people. (R. 48).

### III.   ALJ'S DECISION

Following the administrative hearing, the ALJ issued a decision in which she made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2.   The claimant has not engaged in substantial gainful activity since August 14, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.   The claimant has the following severe impairments: depression, anxiety, and post-traumatic stress disorder ("PTSD") (20 CFR 404.1520(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, repetitive tasks with only occasional changes in the work setting and occasional contact with the public and coworkers.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.   The claimant was born on June 3, 1958 and was 62 years old, which is defined as an individual closely approaching retirement age, on the alleged disability onset date (20 CFR 404.1563).

8.   The claimant has at least a high school education (20 CFR 404.1564).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding

that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 14, 2020, through the date of this decision (20 CFR 404.1520(g)).

(R. 18-28). Accordingly, the ALJ found Plaintiff was not disabled. (R. 29).


## IV.    LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If she is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past work. If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 404.1520(a)(4).  The disability claimant bears the burden of establishing steps one through four.  If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, she is able to perform substantial gainful activities in jobs existing in the national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it.  *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The court has plenary review of legal issues.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.    DISCUSSION

In her request for review, Plaintiff raises one claim for review:

> (1) The ALJ's RFC determination is unsupported by substantial evidence and is the product of legal error where the ALJ found the mental opinion of consultative examiner Martha Diprinzo, M.A., to be greatly persuasive, but failed to discuss why her moderate limitation in supervisor interaction was not incorporated as part of the RFC.

(Pl.'s Br., ECF No. 10, at 1).

With respect to Diprinzo's opinion regarding Plaintiff's mental limitations, the ALJ

wrote:

> In July 2021, Licensed Psychologist Diprinzo indicated that the
> claimant was mildly limited in her ability to understand and
> remember simple instructions, carry out simple instructions[,]
> make judgments on simple work related decisions[;] and
> moderately limited in her ability to understand and remember
> complex instructions, carry out complex instructions, make
> judgments on complex work related decisions, interact
> appropriately with the public, supervisors, and coworkers, and
> respond appropriately to usual work situations and changes in a
> routine work setting ([R. 374-85]).  This assessment is generally
> persuasive as to the finding that the claimant has no more than
> moderate limitation in any mental functional domain as this is
> consistent with the record as a whole, including the claimant's
> general normal mental status examinations, the results of the July
> 2021 mental status evaluation, her treatment history, and her
> ability to perform many activities of daily living independently
> ([R. 231-40, 270-77, 374-572, 583-94, 599-632]).

(R. 25).

### A.    The Parties' Positions

Plaintiff argues that the ALJ committed error by failing to discuss why the consultative examiner's supervisor interaction limitation was not included in the RFC despite the fact that the ALJ found Diprinzo's opinion generally persuasive and adopted the moderate limitations she assessed concerning Plaintiff's interactions with the public and coworkers.  (Pl.'s Br., ECF No. 10, at 1, 3-11).  She contends that the ALJ did not identify any functional limitations from Diprinzo's opinion that she found to be unpersuasive, did not give any indication that she intended to reject the therapist's assessment of Plaintiff's ability to interact with supervisors, and declined to provide any discussion regarding supervisor interaction elsewhere in the opinion. (*Id.* at 6-7).  Plaintiff notes that district courts in the Third Circuit have remanded for further proceedings in similar cases where the ALJ failed to explain why a mental limitation was not adopted in the RFC.  (Pl.'s Br., ECF No. 10, at 8-9) (discussing *Nickens v. Colvin*, No. 14-140, 2014 WL 4792197 (W.D. Pa. Sept. 23, 2014), and *Fisher v. Kijakazi*, No. 3:20-CV-00940, 2021

WL 352050 (M.D. Pa. Aug. 11, 2021)).  Furthermore, she argues that the evidence in this case

supports the finding that Plaintiff would have difficulty interacting with supervisors.  (*Id.* at 8-

10.)  Additionally, she indicates that the ALJ's omission of this limitation from her RFC and the

hypothetical posed to the VE results in harmful error.  (*Id.* at 8-11.)

       The Commissioner responds that the fact the ALJ found the consultative examiner's

opinions to be generally persuasive did not require the ALJ to incorporate every limitation

assessed by Diprinzo in the RFC.  (Resp., ECF No. 11, at 6-7)  There purportedly is no evidence

to support a limitation concerning supervisor interactions because, when asked why she could

not perform any work in the national economy, Plaintiff did not testify that she would have

difficulty interacting with her supervisors but instead focused on her inability to complete tasks.

(*Id.*).  Asserting that the ALJ need not discuss every individual medical opinion from the same

source nor expressly discuss every factor that the ALJ considers, the Commissioner argues that

the ALJ explained why additional limitations were not incorporated into the RFC.  (*Id.* at 7-14.)

       The Commissioner claims that "the ALJ's thorough decision explained how Plaintiff's

hearing testimony, daily activities, the objective medical evidence, the results from her

consultative examination, her treatment history, and the prior administrative medical findings did

not fully support her allegations about the severity of her symptom, as well as her ability to

interact with others."  (*Id.* at 7) (citing R. 19-26)  He attempts to distinguish the case law cited

by Plaintiff on the grounds that there is no evidence that a moderate limitation in Plaintiff's

ability to interact with supervisors would result in a finding of disability; the ALJ provided

ample support for not altering the RFC further in light of Diprinzo's opinion and thoroughly

discussed the evidence supporting her conclusion that Plaintiff did not have any limitation

concerning supervisor interactions; and Plaintiff fails to mention in her brief "her own

acknowledgment in these documents that she has 'no problem' getting along with authority

figures."  (*Id.* at 11-13) (citing R. 222, 248).

The Commissioner further posits that the deferential standard of review only requires that the agency's reasoning be "reasonably discernable" and that the reviewing court must consider the decision as a whole and decide whether the agency implicitly made the necessary finding. (*Id.* at 13-14) (quoting *Garland v. Ming Dai*, 141 S. Ct. 1669, 1679 (2021)).  The Commissioner claims that Plaintiff cites to no specific evidence showing difficulties with supervisors and that, given her "authority figure" admissions, it is unclear what evidence would support such a limitation.  (*Id.* at 14).

Plaintiff replies that the ALJ erred by failing to explain why she implicitly rejected Diprinzo's moderate limitation in supervisor interactions despite giving persuasive weight to her opinion and the opinions of two state agency psychologists, who also assessed moderate limitations in Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors.  (Reply, ECF No. 1, at 1-2).  She claims that the Commissioner's arguments constitute improper post-hoc rationalizations because the ALJ provided no specific reasoning for her decision to disregard the supervisor limitation.  (*Id.* at 2).  Furthermore, Plaintiff notes that, in *Fisher*, the court observed that the ALJ gave significant weight to a medical opinion with social functioning limitations but failed to provide reasons as to why he did not adopt all of them. (*Id.* at 2-3).  She asserts that the ALJ committed a similar error by disregarding the consultative examiner's opinion, which provided for a broad range of social functional limitations, and failing to discuss why Plaintiff would have difficulty with the public and other employees but not with supervisors.  (*Id.* at 2-3).

### B.    Analysis

ALJs must evaluate the persuasiveness of each medical opinion and each prior administrative medical finding.  *See* 20 C.F.R. § 404.1520c(a).  Five factors determine

persuasiveness: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, purpose, and extent of the treatment relationship, as well as frequency of examinations and whether the medical source examined the claimant firsthand; (4) specialization; and (5) other factors, like "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id*. Supportability and consistency are the most important factors. *Id.* § 404.1520c(b)(2). ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency. *Id.*

It is well established that the ALJ is free to reject a medical source opinion but in doing so must indicate why evidence was rejected so that a reviewing court can determine whether 'significant probative evidence was not credited or simply ignored." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). While an ALJ's decision need not discuss "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004), it must still consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections," *Burnett*, 220 F.3d at 122. When faced with conflicting medical opinions, an ALJ may choose who to credit but "must consider all the evidence and give some reason for discounting the evidence he rejects." *Becker v. Comm'r of Soc. Sec. Admin.*, 403 F. App'x 679, 686 (3d Cir. 2010); *Plummer*, 186 F.3d at 429. Although the ALJ need not credit every medical opinion, she must consider every medical opinion. 20 C.F.R. § 404.1527(b)-(c). Her explanation "must be sufficient enough to permit the court to conduct a meaningful review." *Burnett*, 220 F.3d at 119-20.

Given the inclusion in the RFC of limitations for interactions with coworkers and the general public, and the omission of any corresponding limitation for interactions with supervisors, it appears that the ALJ implicitly rejected the consultative examiner's opinion

concerning supervisor interactions. Such a reading is supported by the ALJ's use of qualified language concerning Diprinzo's overall assessment, i.e., it was "generally" persuasive as to the findings that Plaintiff had "no more than" moderate limitations in any domain of mental functioning. (R. 25). In any event, meaningful review of the ALJ's implicit determination is not possible because "the Court cannot say whether the ALJ failed to incorporate [the supervisor interaction] limitation[] into [her] RFC for 'no reason or the wrong reason.'" *Reynolds v. Colvin*, No. 16-576, 2017 WL 771256, at *4 (W.D. Pa. Feb. 28, 2017) (quoting *Plummer*, 186 F.3d at 429); *see e.g.*, *Burnett*, 220 F.3d at 119-20.

"The public, supervisors, and co-workers constitute distinct groups, and are separately addressed on the [Commissioner's] mental residual capacity forms. Thus, limitations on two of these types of interactions does not account for limitations on the third." *Nickens*, 2014 WL 4792197, at *2; *see also, e.g.*, *Joan G. v. Commissioner of Soc. Sec.*, No. 23-CV-00102-FPG, 2024 WL 108678, at *3 (W.D.N.Y. Jan. 10, 2024) (quoting *Nickens*). If the ALJ distinguishes between groups for purposes of social interaction, she must explain and provide support for the distinction. *See, e.g.*, *Lionel James G.L. v. Comm'r of Soc. Sec.*, No. 7:23-cv-03204-CS-GRJ, 2024 WL 213387, at *8 (W.D.N.Y. Mar. 21, 2024) (quoting *Timikia C. v. Comm'r of Soc. Sec.*, No. 3:19-CV-587 (ATB), 20223 WL 5367796, at *3 (W.D.N.Y. Aug. 23, 2023)). In fact, "[a]ny evidence supporting limitations in an ability to interact with others would seem to call for greater restrictions in [a claimant's] ability to interact with supervisors than with any other persons." *Fisher*, 2021 WL 3525050, at *1.

The ALJ did not explain why she implicitly rejected Diprinzo's conclusion that Plaintiff was moderately limited in her ability to interact with supervisors while, at the same time, adopting the consultative examiner's findings regarding Plaintiff's moderate limitations with respect to interactions with the public and coworkers. District courts in this Circuit have

14

remanded for further proceedings in similar circumstances.  In *Nickens*, the ALJ gave substantial

weight to the opinion of a non-examining agency consultant and included in the RFC the

moderate limitations assessed by the consultant with respect to interactions with the public and

coworkers.  *Nickens*, 2014 WL 4792197, at *1.  But the ALJ failed to include any limitation on

interacting with supervisors.  *Id.*  Because there was "no indication that he separately considered

[the consultant's] opinion regarding Plaintiff's inability to interact with supervisors, or why he

might have rejected such a limitation," the matter was remanded "so that the ALJ may address

whether he rejected this limitation, or, if he failed to consider it, to do so."  *Id.* at *2.  The *Fisher*

court determined that the ALJ provided no explanation for limiting the claimant to occasional

interactions with coworkers while permitting frequent interaction with supervisors.  *Fisher*, 2021

WL 352050, at *1.  "Despite affording significant weight to that opinion [that the claimant

would have mild difficulty interacting with both supervisors and coworkers], the ALJ does not

explain why he treated [claimant's] ability to interact with supervisors and coworkers differently,

in spite of the . . . opinion that [claimant] was equally able—or perhaps unable—to interact with

either category of persons."  *Id.*

Unlike the ALJs in *Fisher* and *Nickens*, the ALJ did generally reference the consistency

between the therapist's assessment that Plaintiff had "no more than moderate limitation" in any

mental functional area and "the record as a whole, including the claimant's general normal

mental status examinations, the results of the July 2021 mental status evaluation, her treatment

history, and her ability to perform many activities of daily living."  (R. 25) (citations omitted).

In her decision, the ALJ had previously summarized the medical and non-medical evidence in

the record.  (R. 21-23).  She concluded that the objective evidence failed to provide strong

support for the Plaintiff's allegations of disabling symptoms and limitations and did not support

the existence of limitations greater than the assessed RFC.  (R. 23).  The ALJ explained that,

while Plaintiff may not be able to perform the duties required of an attorney, she evidently retained the ability to perform unskilled work, had not required psychiatric hospitalization or intensive outpatient treatment, and had remained stable with her current treatment regimen, with symptom exacerbations caused by life stressors.  (*Id.*; *see also* R. 20-21).  The Commissioner relies on this prior discussion to argue that the ALJ provided a thorough explanation for why she discounted the supervisor interaction limitation.  (Resp., ECF No. 11, at 1-3, 7-11).

However, the ALJ still failed to provide any indication in this discussion why she treated Plaintiff's ability to interact with supervisors differently from her ability to interact with any other group.  *See, e.g.*, *Lionel James G.L.*, 2024 WL 213387, at *8.  "In fact, nowhere in the opinion did ALJ specifically discuss or analyze [P]laintiff's ability to interact with supervisors . . ., nor did [she] explain why [she] treated [P]laintiff's ability to interact with the general public [and co-workers] different than with supervisors."  *Annamarie A. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1326-MJR, 2022 WL 2712539, at *8 (W.D.N.Y. Jul. 13, 2022); *see also, e.g.*, *Donna W. v. Kijakazi*, No. 1:21-cv-11285, 2023 WL 869097, at *9 (D.N.J. Jan. 27, 2023) (concluding that substantial evidence did not support RFC determination because, inter alia, ALJ never explained why he applied different levels of interaction and the Court was "unable to glean from the totality of the ALJ's decision why the ALJ determined that Plaintiff was capable of frequent interaction with supervisors and coworkers").

In addition, the ALJ found at step three that Plaintiff had moderate limitations in interacting with others, indicating that she could shop, maintain relationships with her husband and daughter, and live with others, and that she was described as cooperative in the medical evidence.  (R. 19) (citing R. 241-42, 270-77, 374-85).  She further noted that the state agency psychological consultants (Dr. Galdieri and Dr. Franks) found that Plaintiff had a moderate limitation in interacting with others.  (R. 20) (citing R. 57-73, 75-83).  Despite finding at step

three moderate limitations in interacting with others without specifically distinguishing between different groups of people, the ALJ's RFC differentiated between interactions with the public and coworkers, which were limited to only occasional contact, and interactions with supervisors, which were implicitly unlimited.  *See, e.g.*, *Donna W.*, 2023 WL 869097, at *9 (stating that, despite the ALJ finding that claimant had a moderate limitation in her ability to interact with others without distinguishing between family, authority figures, people at work, and other groups, the RFC differentiated between occasional interaction with the public and frequent interaction with supervisors and coworkers).  The ALJ has failed to explain this apparent inconsistency between her step three analysis and RFC discussion.  *See, e.g.*, *id.* ("Accordingly, considering this apparent inconsistency and the ALJ's failure to explain this inconsistency, this Court cannot conclude that substantial evidence supports the ALJ's RFC determination.") (citing *Stanford v. Comm'r of Soc. Sec.*, No. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014)).

Given the deficiencies in the ALJ's decision, this Court rejects the Commissioner's argument that her decision provided an adequate explanation for her findings concerning Diprinzo's "social interaction" assessment.  (Resp., ECF No. 11, at 7).  To the extent that the Commissioner attempts to explain how the evidence supports differentiating between different groups for social interaction purposes, *see, e.g.*, *Lionel James G.L.*, 2024 WL 213387, at *8, his contentions must be rejected as impermissible *post hoc* justifications.  *See, e.g.*, *Schuster v. Astrue*, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision.") (quoting *Keiderling v. Astrue*, No. 07-2237, 2008 WL 2120154, at *3 (E.D. Pa. May 20, 2008)); *see also Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986) ("While there is other evidence in the record that could support a finding of disability ..., our inquiry is not whether the ALJ could have reasonably made a different finding

17

based on this record.  Rather, we must review whether the ALJ's actual findings are supported by substantial record evidence.").

In fact, the Commissioner relies on evidence that was either not referenced by the ALJ in her decision or did not play a role in her evaluation of Diprinzo's opinion.  The Commissioner emphasizes Petitioner's statements in her adult function reports that she has no problems with authority figures.  (Resp., ECF No. 11, at 1, 8, 12-14) (citing R. 222. 248).  But the ALJ never mentioned these statements; nor did she mention the Plaintiff's testimony that the other partners at work helped her.  (*Id.* at 8) (arguing that Plaintiff's testimony that she received help at work demonstrates her ability to work with others).  Furthermore, ALJ omitted any reference to the prior administrative medical findings in her discussion of Diprinzo's opinion.  She did not consider the findings by the state agency psychologists until after she addressed the opinion at issue here.

In any event, Dr. Galdieri found that Plaintiff's social and coping skills were functional and that she was not significantly limited in her ability to ask simple questions, request assistance, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness.  (R. 68-69).  However, he also opined that Plaintiff had moderate limitations in her ability to accept instructions and respond appropriately to criticism from supervisors.  (*Id.*).  Upon reconsideration, Dr. Franks affirmed Dr. Galdieri's opinion regarding her limitations in accepting instructions and responding to criticism.  (R. 81).  The ALJ provided the same explanation as to the weight she accorded to the state agency psychological consultants' opinions that she had previously provided concerning Diprinzo's assessment: they were found to be generally persuasive as to the finding that Plaintiff had no more than moderate limitation in any mental functional domain because of the opinions' consistency with the record as a whole, including the generally normal mental status examinations, the treatment history, and Plaintiff's

ability to perform many ADLs independently.  (R. 26) (citing R. 231-40, 270-77, 374-572, 583-94, 599-632).  Accordingly, the ALJ's analysis of the state agency consultants' opinions has the same deficiencies as her discussion of Diprinzo's assessment.

The Commissioner indicates that under either the current or the prior regulations governing the consideration of medical opinions, an ALJ is not required to adopt every limitation from an opinion she finds to be generally persuasive.  (Resp., ECF No. 11, at 6-7).  However, our remand is not based on any failure by the ALJ to adopt every limitation in a "generally persuasive" opinion.  *See, e.g.*, *Irwin v. Comm'r of Soc. Sec.*, No. 19-5109, 2020 WL 1888958, at * (E.D. Pa. Apr. 17, 2020) ("The ALJ was not required to adopt all of Dr. Ali's opinion solely because she found the opinion as a whole persuasive.") (quoting *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014)).  The Court instead concludes that remand is warranted because the ALJ implicitly rejected an assessed limitation from a medical opinion without providing a meaningful explanation.  *See, e.g.*, *Burnett*, 220 F.3d at 119-20 (stating that ALJ's explanation must be sufficient to permit meaningful review).  Likewise, "[w]hile [it is certainly the case that the applicable regulation requires only source-level articulation," *see* 20 C.F.R. 404.1520c(a)], the new regulations have not upended the established demands of the substantial evidence standard which requires that any rejection of relevant evidence be explicit so as to be reviewable."  *Prodin v. Kijakazi*, No. 20-1372, 2022 WL 973703, at *5 n.2 (M.D. Pa. Mar. 31, 2022) (citing *Cotter*, 642 F.2d at 706-07).

Finally, the Commissioner suggests that any error was harmless because of the absence of evidence either indicating that Plaintiff had difficulties with supervisors or that a moderate limitation in supervisor interactions would result in a finding of disability.  (Resp., ECF No. 11, at 7, 11, 14).  Neither claim has merit.

Although Plaintiff does not point to specific evidence that Plaintiff had difficulties

interacting with supervisors in her past job at the law firm, there is some evidence in the record that Plaintiff had problems interacting with others. For instance, in the consultative mental status evaluation, Plaintiff reported crying spells, irritability, social withdrawal, excessive apprehension and worry, restlessness, anxiousness in crowds, a preference to stay at home, and panic attacks. (R. 375). Upon examination, Diprinzo found that Plaintiff had a somewhat depressed, flat, and restricted affect. (R. 376). Plaintiff also told her primary care physician that was crying, tearful, and anxious, and she indicated in her adult function reports and in her administrative hearing testimony that she does not want to be with other people. (R. 48, 220-21, 247, 274, 415-16); *see also, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(2) (stating that examples in "interaction" area of mental functioning including handling conflicts, responding to criticism and correction, and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness). Given the evidence and her step three analysis, it is the ALJ's responsibility to explain in the first instance why she implicitly rejected Diprinzo's opinion that Plaintiff was moderately limited in her interactions with supervisors. *See, e.g.*, *Lionel James G.L.*, 2024 WL 213387, at *8; *Nickens*, 2014 WL 4792197, at *1.

Furthermore, no limitation for supervisor interactions was included in the hypothetical posed to the VE. (*See* R. 53-56). Accordingly, the ALJ's failure to explain why this limitation was omitted cannot be viewed as harmless. *See, e.g.*, *Michael P. v. Kijakazi*, No. 1:21-cv-1134, 2023 WL 3001415, at *10 (D.N.J. Apr. 19, 2023) (concluding that failure to include limitation relating to ability to interact with coworkers, and failure to explain that omission, was not harmless because VE was asked to assume a claimant who was limited only in his ability to interact with the public); *Nickens*, 2014 WL 4792197, at *2 ("This omission infects the hypothetical to the vocational expert, which, in this case, did not include a reference to interaction with supervisors.") (citing *Lloyd v. Astrue*, 2012 WL 4865401 (M.D. Fla. 2012);

*Field v. Astrue*, 2011 WL 2469587 (N.D. Tex. June 21, 2021)).

**VI.     CONCLUSION**

     For the reasons set forth above, Plaintiff's request for review is **GRANTED**.  This matter is remanded for further proceedings consistent with this memorandum.  An appropriate Order follows.

                                             BY THE COURT:

                                              /s/ Lynne A. Sitarski
                                             LYNNE A. SITARSKI
                                             United States Magistrate Judge